# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| PATRICK PHILLIPS, a/k/a Patrick Gerard Phillips, a/k/a Patrick G. Phillips, ) ) ) | |
| Plaintiff, ) ) | |
| ) | No. 2:19-cv-02822-TLP-tmp |
| v. ) ) | |
| ) | JURY DEMAND |
| FLOYD BONNER, JR., Sheriff of Shelby County Tennessee, et al., ) ) ) | |
| Defendants. ) | |

**ORDER DISMISSING AMENDED COMPLAINT WITH PREJUDICE, DENYING LEAVE TO AMEND, DISMISSING CASE IN ITS ENTIRETY, ENTERING JUDGMENT, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, NOTIFYING PLAINTIFF OF APPELLATE FILING FEE, AND ASSESSING FIRST STRIKE UNDER 28 U.S.C. § 1915(g)**

Plaintiff Patrick Phillips sued pro se under 42 U.S.C. § 1983. (ECF No. 1.) After the Court granted him leave to amend, Plaintiff amended his complaint by adding details about his claims, providing supporting exhibits, and adding to his damages. (ECF No. 22.) For the reasons below, the Court finds that Plaintiff's complaint still fails to state a viable § 1983 claim. The Court therefore **DISMISSES** his complaint with prejudice.

## PROCEDURAL BACKGROUND

In early 2020, this Court dismissed Plaintiff's pro se complaint without prejudice for failure to state a claim on which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). (ECF Nos. 1; 5 at PageID 18.) Plaintiff's first complaint alleged that members of the "mail room staff" at Shelby County Sheriff's Office ("SCSO") refused to give him four law books that he bought from a SCSO-approved publisher. According to the staff, the books

"involved 'manipulation.'" (ECF No. 1 at PageID 2.) The mailroom staff did not return the books to the sender, and Plaintiff did not receive a refund for his purchases.[1] (*Id*.) He argued that the books were "appropriate, applicable, and critical published works of law needed to prepare [himself] for post-trial proceedings." (*Id*. at PageID 3.)

In its order screening the complaint, this Court found that Plaintiff failed to state claims against Defendants in their official capacities because he did not allege that a Shelby County policy or custom caused the alleged violations of his rights. (ECF No. 5 at PageID 16.) The Court, however, granted Plaintiff leave to amend his complaint. (*Id.* at PageID 18.)

After several extensions of time, Plaintiff amended his complaint. (ECF No. 14.) But that amended complaint was confusing in several respects. (*See* ECF No. 16 at PageID 221.) Because his claims required more clarification, this Court ordered him to amend his complaint again. (*Id*. at PageID 222.)

Plaintiff, however, said he could not amend his complaint without a copy of the inmate mail policy at SCSO. And he emphasized that he had made "repeated requests" for a copy of the policy. (*See* ECF Nos. 11 & 14.) As a result, the Court directed the Clerk to issue a subpoena to the Shelby County Attorney's Office for a copy of the County's inmate mail policy. (ECF No. 15.) The Court also directed Shelby County to file notice of compliance and gave Plaintiff thirty days after that notice to amend his complaint again. (ECF No. 16 at PageID 222.) The record reflects that the County gave Plaintiff the policy about a month later. (ECF No. 19.) But Plaintiff still denied that he had received the policy. (ECF No. 20 at PageID 230.)

---

[1] He submitted grievances about the rejected books and SCSO staff denied them. (ECF No. 1 at PageID 2.)

Plaintiff then amended his complaint about 45 days later.  The Court has been screening that complaint . (ECF No. 22.)  Although this complaint is technically untimely (*see* ECF No. 16 at PageID 222), the Court considers it timely for screening purposes, because it is not clear when Plaintiff received a copy of the mail policy from the County.

## LEGAL STANDARDS

**I.    Screening Requirements Under 28 U.S.C. § 1915A**

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of them, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint here states a claim on which relief may be granted, the Court applies the standards of Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those standards, the Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

And Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 555.

3

But it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3.

Even so, courts screening cases will give slightly more deference to pro se complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612–13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.     Elements of a 42 U.S.C. § 1983 Claim

Plaintiff's amended complaint (ECF No. 22) alleges claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2020).

To state a claim under § 1983, a plaintiff has to allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). For Plaintiff's claims to survive screening, Plaintiff must satisfy these requirements.

**ANALYSIS OF PLAINTIFF'S CLAIMS**

Plaintiff's final amended complaint names Shelby County as Defendant and attaches these exhibits:

1. 2018 SCSO Policy 405.00 – 405.14 (ECF No. 22-1 at PageID 243–52); 2017 SCSO Policy 405.00 – 405.13 (ECF No. 22-2 at PageID 253–62); and SCSO Policy 405.00 – 405.13 (ECF No. 22-3 at PageID 263–71 (undated));

2. SCSO Inmate Mail Notification Forms dated: November 27, 2018 (ECF No. 22-4 at PageID 272 (stating "book involved manipulation")), December 18, 2018 (ECF No. 22-5 at PageID 273 (stating "books involve[] manipulation")), December 19, 2018 (ECF No. 22-6 at PageID 274 (stating "book involves manipulation")), January 15, 2019 (ECF No. 22-20 at PageID 288 (stating "photos too large 4x6 only")), February 26, 2019 (ECF No. 22-21 at PageID 289 (stating "no bubble mailer allowed")), February 26, 2019 (ECF No. 22-22 at PageID 290 (stating "bubble mailers not allowed by Jail")), April 9, 2019 (ECF No. 22-24 at PageID 292 (stating "must be fully clothed with pants on")), and September 26, 2019 (ECF No. 22-25 at PageID 292 (stating "no showing of the breast allowed"));

3. SCSO Inmate Book(s) Received Verification Form dated December 19, 2018 (ECF No. 22-7 at PageID 275 (reflecting book title "Advanced Legal Writing and Oral Advocacy"));

4. SCSO Inmate Grievance Forms dated December 26, 2018 (ECF No. 22-8 at PageID 276), January 3, 2019 (ECF No. 22-11 at PageID 279), January 16, 2019 (ECF No. 22-10 at PageID 278), and February 1, 2019 (ECF No. 22-23 at PageID 291);

5. SCSO's January 7, 2019 Inmate Grievance / Investigation Response Letter to Plaintiff (ECF No. 22-9 at PageID 277 (stating that "the graphic nature of contents in each of the books were the reason for the returns. Even though the books are written by an attorney if the contents are inappropriate they are still not allowed into the jail."));

6. Paralegal Access Forms completed by Plaintiff and dated January 10, February 11, February 19, March 25, April 1, April 10, June 4, and October 14, 2019 (ECF Nos. 22-12, 22-13, 22-14, 22-15, 22-16, 22-17, 22-18 & 22-19); and

7. Undated handwritten note (ECF No. 22-26 at PageID 294–95 (stating "I decided to just send [sic] a short note with these two pictures and see if you actual[ly] get them") (enclosing two photos)).

(ECF No. 22.) The amended complaint also asks the Court to issue process and for various discovery documents. (*Id.* at PageID 242.) And he requests a trial on the merits and "damages as may be proven at trial." (*Id.*) The Court now turns to analyze Plaintiff's claims.

## I.     Claims About Access to the Courts

Plaintiff claims he bought four books from publishers designated as "acceptable" under SCSO Policy 405 ("the Books"), which unspecified SCSO personnel returned to senders because the materials "involved manipulation" ("the Book Returns"). (ECF No. 22 at PageID 234.) Plaintiff argues that the Book Returns violated SCSO Inmate Mail Services Policy 405 about incoming inmate mail. According to the amended complaint's attachments, SCSO Policy 405 says:

> Inmate mail, both incoming and outgoing, may be opened to . . . inspect for contraband. Mail is read, censored, or rejected based on legitimate facility interests of order and security. Inmates are notified in writing when incoming and outgoing letters are withheld in part or in full. . . . Inmates at the SCSO Jail may not receive packages unless it is clearly marked "Legal."

(*Id.* at PageID 234; ECF No. 22-2 at PageID 256.) Also under the policy, "[m]ailroom staff must [h]andle, sort, and secure inmate's mail in the mailroom, to prevent theft, tampering, delay, or interference," and "[p]ublished materials must be mailed directly from a listed publisher or distributor." (ECF No. 22-2 at PageID 257.) What is more, mailroom staff must "maintain a permanently bound ledger titled 'Record of Return to Sender.'" (*Id.* at PageID 260.)

Plaintiff argues that neither Policy 405 nor any SCSO Jail Division policy prohibit him from receiving the Books. (ECF No. 22 at PageID 237.) And he disputes whether SCSO returned the Books to the publishers at all. (*Id.* at PageID 236.) And when he submitted grievances about the Book Returns, the mailroom supervisor told him that staff "had been instructed to forward [his] future book deliveries to her office to be personally inspected." (*Id.*)

Like his original complaint, Plaintiff's amended complaint alleges that Defendants denied him access to the courts. (ECF Nos. 1 at PageID 3; 22 at PageID 234.) This is because he allegedly needed the Books to assert post-trial legal claims. For example, Plaintiff bought a book titled "Advanced Legal Writing and Oral Advocacy" to prepare ineffective assistance of counsel claims over his sentencing hearing and motion for new trial.[2] (*Id*. at PageID 234, 236 & 237.) He also bought a used book about Tennessee criminal trial practice. (*Id*. at PageID 234.)

But based on this amended complaint, the Court cannot plausibly infer that Plaintiff has a viable post-trial claim or that he needed the Books to pursue any post-trial claims. (*See* ECF No. 5 at PageID 17.) For Plaintiff to state a claim that Defendants denied him his First Amendment right to access the courts, he has to "show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Here though, Plaintiff states only that he "purchased [the Books] to educate and inform [him], in preparation for post-trial proceedings in which [his] trial counsel's representation and performance exemplified ineffectiveness of duties as fiduciary, warranting open ridicule from the trial court judge." (ECF No. 22 at PageID 234.)

These vague and nonspecific contentions do not show that Defendants' conduct "hindered [Plaintiff's] efforts to pursue a nonfrivolous legal claim." *See Rodgers*, 14 F. App'x at 409. Plaintiff explains that "the printed materials were legal reference guides needed to assist [him] in researching case laws, expert opinions, and legal strategies to prepare [him]self for the

---

[2] Plaintiff further alleges that Defendants often took up to six weeks to fulfill his requests for legal materials within the SCSO facility. (ECF Nos. 22 at PageID 237; 22-12–22-19.) And Defendants supposedly limit the number of legal materials that prisoners can request at any given time. (ECF No. 22 at PageID 237.)

2018-2019 post-trial proceedings." (*Id.* at PageID 236; *see also id*. at PageID 237 (the denial of the Books "damag[ed] . . . my ability to adequately prepare for raising proper challenges to the botched representation of my counsel during multiple court appearances").) But even with these allegations, the Court cannot evaluate the non-frivolous nature of his post-trial arguments themselves. All in all, the new allegations in Plaintiff's amended complaint do not alter the Court's earlier finding that Plaintiff shows no actual injury related to his claim for denial of access to the courts. (*See* ECF No. 5 at PageID 17.)

For these reasons, Plaintiff's amended complaint fails to state a claim for relief on these grounds.

## II.     Official Capacity Claims

Plaintiff also sues Shelby County. (*See* ECF No. 22 at PageID 233.) To show municipal liability against a local government, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

Plaintiff here claims that "Shelby County is solely responsible for manipulating its own Policies and Procedures, in a deliberate effort to justify the flagrant denial, mishandling, and ultimate loss and/or theft of [his] purchased printed legal materials." (ECF No. 22 at PageID 237.) But Plaintiff also alleges that SCSO mail policies are "often overruled by the personal discretion of the individual handler of an Inmate's [sic] incoming/outgoing mail." (*Id*. at PageID 238). And he claims that unspecified mailroom employees did not return the Books to the publishers, and that this "corroborates the malicious indiscretion used in the handling of mail and

8

the wanton power(s) that are delegated to mailroom staff to employ hypocritical double standards that cause damage to senders and recipients of mail." [3] (*Id*.)

What is more, Plaintiff alleges that the SCSO Inmate Grievance Department ("IGD") "blindly" responded to his grievance[4] about the Books "between seventeen and forty-one days AFTER the books were supposedly 'RETURNED.'" (ECF No. 22 at PageID 235 (emphasis in original).) He further argues that the IGD's December 26, 2018, determination of the Books' "manipulati[ve]" nature was inconsistent with the IGD's January 7, 2019, decision that the Books were "graphic [in] nature." (*Id*.) And he claims that the IGD's characterizations of the Books as "manipulative," "inappropriate," and "graphic in nature" were "irrefutably false." (*Id*. at PageID 237 (collectively "the Content Determinations").)

Like his first complaint, nothing in Plaintiff's amended complaint shows that a Shelby County policy or custom deprived him of his constitutional rights. Instead, he alleges only that unidentified SCSO mailroom employees individually misapplied SCSO inmate mail policies case-by-case. (*Id.* at PageID 240.) Plaintiff also claims that SCSO employees should not have rejected the Books under Policy 405. But the amended complaint does not argue that the terms

---

[3] In support of his claims about the Books, Plaintiff describes problems with other pieces of his mail. For example, SCSO personnel returned his mail to senders because "photos were larger than 4 x 6" and the mail "was sent in bubble wrapped envelopes." (ECF No. 22 at PageID 237.) Plus SCSO personnel destroyed three "professional quality composition books" that an SCSO-approved distributor sent to Plaintiff. (*Id*. at PageID 238.) Plaintiff argues that these incidents reveal that "[t]here is no uniformed method by which SCSO Policy #405 is applied to the determination of appropriate versus inappropriate photographs, books [sic], and printed materials. The determination is based on the personal bias of the individual handler of one's mail . . . ." (*Id*. at PageID 240.)

[4] In response to Plaintiff's December 26, 2019 grievance about the SCSO mailroom's "wrongful rejection" of his four books (ECF No. 22-8 at PageID 276), the IGD's January 7, 2019, letter explained that SCSO staff rejected the books "[d]ue to the graphic nature of contents in each of the books." (ECF No. 22-9 at PageID 277 ("Even though the books are written by an attorney, if the contents are inappropriate they are still not allowed into the jail").)

of Policy 405 itself constitutionally injured Plaintiff. "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (internal citation omitted). The bottom line is that Plaintiff has not shown that the County—and not individual SCSO employees—caused his injuries.

Because Plaintiff has not alleged that the terms of Policy 405 injured him, he does not state a claim for relief against Shelby County.

### III.   Claims About Mail Delays

Plaintiff also claims that there is "extreme delay" with "outgoing mail within the city/county limits of the SCSO Jail Division." (ECF No. 22 at PageID 239 (alleging that mail sent to addresses within walking distance of the SCSO had not reached recipients "approximately two weeks after being placed in the Jail's mailbox").) Plaintiff contends that these delays violate SCSO Policy 405.04. That provision provides that, "[e]xcluding weekends and holidays or emergency situations, incoming and outgoing letters are held for no more than twenty-four hours and packages are held for no more than forty-eight hours." (ECF Nos. 22-1 at PageID 246; 22-2 at PageID 256; 22-3 at PageID 265.) And so, he argues that SCSO's mail delays are "due [to] the direct negligence and disregard of SCSO Jail Division Policy 405.04 by Shelby County employees."[5] (ECF No. 22 at PageID 239.)

Plaintiff's allegations about the speed of incoming and outgoing mail do not state a claim for relief here. Even if SCSO staff untimely processed his outgoing letters under Policy 405.04's

---

[5] Plaintiff also grieved the mail delays. (ECF No. 22-23 at PageID 291.) But neither the grievance nor the amended complaint explain how the mail delays injured him. (*See* ECF Nos. 22; 22-23.)

timeline, he does not state a claim of constitutional magnitude.  This is because an inmate's allegation that jail officials failed to follow a correctional facility's administrative policies does not by itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007).  After the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995), mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause.  *See Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 728–30 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995)).

Plus, § 1983 does not provide a remedy for violating state laws or regulations.  *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *see also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding a violation of a prison regulation is not actionable under § 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).  Plaintiff, therefore, does not have a constitutional right to have mailroom personnel follow the SCSO mail timeline policies.

Plaintiff also alleges that mail staff acted negligently, leading to "extreme delay involving the delivery of incoming, outgoing, and returned mail." (ECF No. 22 at PageID 239.)  But his allegations of negligence are not actionable under § 1983.  *See*, *e.g, Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994).  So for this reason too, Plaintiff fails to state a claim.

In the end, Plaintiff's allegations about incoming and outgoing mail delays at SCSO do not state a claim for relief.

### IV.     Claims About Grievances

Plaintiff grieved the Book Returns and Content Determinations.  (ECF No. 22 at PageID 234, 235–36, 238 & 239; ECF Nos. 22-8, 22-10, 22-11 & 22-23.)  He was not satisfied with the result of that process.  But as the Court explained in its order dismissing the complaint without prejudice, "[t]here is no inherent constitutional right to an effective prison grievance procedure."  *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).  So in effect, Plaintiff cannot bring an inadequate grievance procedure claim under § 1983.  *Id*.  As a result, Plaintiff's amended complaint does not state a claim for relief about his grievances.

### V.     Claim for Property Loss for the Books

Plaintiff seeks to hold Shelby County liable for the "ultimate loss and/or theft" of the Books.  (ECF No. 22 at PageID 237 ("Book Loss").)  Under the Due Process Clause, "[n]o state . . . shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  But if a state employee deprives a plaintiff of his property, it does not violate due process, as long as the state affords a means to remedy the alleged loss.  *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

The Supreme Court's decision in *Parratt* created the "adequate state law remedy" doctrine.  Courts have applied this doctrine to deny federal forum to certain Fourteenth Amendment due process clause claims.  Under this doctrine, if state law provides an adequate remedy, then loss or destruction of personal property at the hands of government officials does not create a valid due process claim.  *Id*. at 543–44.  This is true even if a state employee's "random and unauthorized act" causes the property loss.  *Id.* at 541.  And so, if there is an

adequate post-deprivation remedy, the deprivation is not one "without due process of law." *Id.* at 542. This rule applies to both negligent and intentional deprivations of property, as long as the government officials did not act under an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).

Based on these principles, a plaintiff must show that he requested a pre-deprivation hearing and government officials denied his request. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Or, that the post-deprivation remedies the government provided were constitutionally insufficient. *Id.* This means that a plaintiff "must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995)).

What is more, the Sixth Circuit has held that "the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted, *see* Tenn. Code Ann. § 9-8-207, and in the absence of resort to state remedies, we do not believe that a federal court may assert jurisdiction." *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)*; see also Hyde v. Leibach*, No. 3:12-CV-168, 2012 WL 1598050, at *3 (M.D. Tenn. May 7, 2012) ("Tennessee has a … viable remedy for losses of property caused by local officials.); *McLaughlin v. Weathers*, 170 F.3d 577, 581–82 (6th Cir. 1999) (Tennessee's statutory post-deprivation remedy satisfies due process requirements).

The Court finds that Plaintiff fails to "plead and prove the inadequacy of state post-deprivation remedies." *See Shuler*, 2019 WL 1777899, at *4. He does not allege that SCSO denied him pre-deprivation remedies for the Book Loss or that its post-deprivation remedies were inadequate. *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing

13

*Brooks*, 751 F.2d at 199) (finding Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted). And because there are state law remedies for the return of property held in police custody, Plaintiff's § 1983 claim fails. Plus, he makes no allegations about the inadequacy of state remedies for his Book Loss. Plaintiff thus fails to state a due process claim here.

## VI. Claim for Personal Property Loss

Plaintiff claims that his personal property went missing when Tennessee transferred him from SCSO to the Tennessee Department of Correction. (ECF No. 22 at PageID 240–41 ("Personal Property Loss").) The lost property includes twenty-four printed items and eighty-seven photographs. (*Id*. at PageID 241.) Like his claim for the Book Loss, Plaintiff does not meet his pleading burden over the Personal Property Loss.

As explained above, a plaintiff cannot bring a § 1983 action for deprivation of personal property where (1) an adequate post-deprivation state remedy exists to address the claim, and (2) plaintiff fails to allege that those procedures are inadequate. *Hudson*, 468 U.S. at 533 (discussing intentional deprivation of property); *Parratt*, 451 U.S. at 543–44 (discussing negligent deprivation of property).

Plaintiff does not address whether state law remedies were adequate here. For example, the amended complaint does not describe (1) what attempts Plaintiff made to recover the Personal Property, or (2) the outcome of those efforts. For these reasons, his allegations about the Personal Property Loss fail to state a claim for relief under § 1983. *See Benson v. Carlton*, 229 F.3d 1150 (Table), 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (affirming dismissal of pro se prisoner's claim for failure to allege inadequate state remedy). And so this claim too fails.

### VII. Claims Against the SCSO

If the amended complaint seeks to sue the SCSO, Plaintiff's claims fail. This is because "[t]he SCSO and Jail are not 'persons' subject to suit under 42 U.S.C. § 1983." *See Dowdy v. Shelby Cnty. Sheriff's Office*, No. 18-cv-02310-TLP-tmp, 2019 WL 3948110, at *2 (W.D. Tenn. Aug. 21, 2019). And even if the Court construes any claims against SCSO as claims against Shelby County, the allegations still fail this screening. Plaintiff has not sufficiently set forth a claim against the County, as explained above.

### VIII. Claims Against Mailroom Supervisor, Chief Jailers & Sheriff Bonner

The amended complaint names only Shelby County as Defendant. (ECF No. 22 at PageID 232–33.) But his amended complaint explains that the SCSO "Mailroom Supervisor, Chief Jailers, and Sheriff Bonner" rejected his requests for SCSO to "acknowledge" that its staff "mishandled" his books. (*See* ECF No. 22 at PageID 236.) If Plaintiff sues the Mailroom Supervisor, Chief Jailers, and Sheriff Bonner, his claims fail. Plaintiff cannot sue these three individuals only because of their alleged positions of authority at SCSO.

Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676; *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). This means "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not done so here. Indeed, as explained above, he has not sufficiently alleged an underlying constitutional deprivation in the first place. As a result, Plaintiff also fails to state a claim against the Mailroom Supervisor, Chief Jailers, or Sherriff Bonner.

### IX.   Plaintiff's Request for Documents

Plaintiff asks the Court to "order the Defendant to produce ALL documents, logs, records, etc. relating to Petitioner's incoming/outgoing mail and personal property while in custody of the [SCSO]." (ECF No. 22 at PageID 242 (emphasis in original).)

But Plaintiff has to serve discovery requests according to the Federal Rules of Civil Procedure, and not by court order. *See*, *e.g.*, Fed. R. Civ. P. 34. And to serve discovery requests, he must state a claim for relief that survives the Court's screening. If Plaintiff states a plausible claim for a relief, Plaintiff's claims will move beyond screening and he will be allowed to seek discovery from Defendants. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (finding plaintiff who stated a plausible claim for relief "deserves a shot at additional factual development, which is what discovery is designed to give him.") (quoting *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010)).

But the Court finds that he does not state a claim for relief, and his claims will not move past screening. So Plaintiff's discovery requests are moot.[6]

The Court therefore **DENIES** Plaintiff's requests for discovery.

### APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court has to also consider whether an appeal by Plaintiff here would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the district court permits a party to proceed in forma pauperis, that party may also proceed on appeal in forma pauperis without further authorization. That is, unless the district court "certifies that the

---

[6] There is also nothing in the record suggesting that Plaintiff served any discovery requests on any Defendant. So if Plaintiff seeks to compel discovery, there is no discovery response that the Court can compel from any Defendants.

appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." Fed. R. App. P. 24(a)(3)(A). If the district court denies pauper status, the party may move to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). And the test for whether a party appeals in good faith is if the litigant seeks appellate review of any issue that is not frivolous. *Id*. "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)). For the same reasons this Court dismisses Plaintiff's claims for failure to state a claim, the Court finds that an appeal would not be taken in good faith. The Court therefore **CERTIFIES**, under Federal Rule of Appellate Procedure 24(a), that any appeal here by Plaintiff would not be taken in good faith. And the Court **DENIES** leave to proceed on appeal in forma pauperis. If Plaintiff appeals, he must pay the full $505 appellate filing fee or move for leave to appeal in forma pauperis with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

## AMENDMENT UNDER THE PLRA

The Court also **DENIES** leave to amend under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). And the Court has also stated

"[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend." *Id*. (quoting *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011)).

Even so, the Court has already allowed Plaintiff to amend his complaint. And yet, he still failed to state a claim for relief. So here, the Court finds that further amendment would be futile. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). For these reasons, the Court finds that it should not allow Plaintiff to amend his claims yet another time.

## NOTICE OF STRIKE ASSESSMENT

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting in forma pauperis status to a prisoner who "has, on 3 or more prior occasions, while incarcerated . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). This is Plaintiff's "first strike," which will take effect when the Court enters judgment. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763–64 (2015).

## CONCLUSION

The Court **DISMISSES** Plaintiff's amended complaint **WITH PREJUDICE** for failure to state a claim on which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii)–(iii) and 1915A(b)(1)–(2). The Court also **DENIES** Plaintiff's request for discovery, as well as his request for the Court to issue process on Defendants. (ECF No. 22 at PageID 242.). And the Court **DENIES** leave to amend, **CERTIFIES** that any appeal here would not be taken in good faith, and **DENIES** Plaintiff leave to proceed in forma pauperis on appeal.

18

Because the Court **DISMISSES** this case with prejudice in its entirety, the Court will enter judgment. Finally, the Court assesses Plaintiff's first strike under 28 U.S.C. § 1915(g) as to all claims in the amended complaint, which will take effect when the Court enters judgment.

**SO ORDERED**, this 7th day of May, 2021.

                                            s/Thomas L. Parker
                                            THOMAS L. PARKER
                                            UNITED STATES DISTRICT JUDGE